THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN ELVART, Defendant-Appellant.

First District (2nd Division)   Nos. 1—87—1554, 1—87—1795 cons.

Opinion filed September 26, 1989.

526

Julius Lucius Echeles and Frederick F. Cohn, both of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Theodore F. Burtzos, and LaCoulton Walls, Assistant State's Attorneys, of counsel), for the People.

JUSTICE DiVITO delivered the opinion of the court:

Defendant John Elvart was charged by indictment with two separate deliveries of less than 10 grams of cocaine. Following a bench trial, he was convicted and sentenced to four years' probation with the first six months in the custody of the Cook County Department of Corrections. He now appeals his conviction and sentence, raising as issues whether his trial counsel's assistance was ineffective; whether the prosecution was barred by either double jeopardy or collateral estoppel; whether the trial court improperly precluded testimony regarding an informant; and whether the trial court erroneously denied his motion for modification of his sentence. We affirm.

On March 27, 1985, defendant delivered one gram of cocaine to Special Agent Brian Kelly, an undercover Northeastern Metropolitan Enforcement Group police officer. This delivery occurred in the bedroom of defendant's apartment in the presence of a female informant who had introduced Kelly to defendant.

On April 5, 1985, Kelly purchased six-tenths of a gram of cocaine for $100 from defendant. This transaction also occurred in defendant's apartment and, according to defendant, the informant was also

present. According to Kelly, the informant was not present during this transaction.

On April 16, 1985, Kelly purchased 2½ grams of cocaine for $300 from defendant. Again, this transaction occurred in defendant's apartment. It is undisputed that the informant was not present during this transaction.

On May 13, 1985, Kelly, defendant, and Mark Allen, who had previously been introduced to Kelly as defendant's source, met in defendant's apartment to complete arrangements for the delivery of two ounces of cocaine for $3,500. After some conversation, Allen left defendant's apartment and returned with Daniel Interian. Kelly received a brown paper bag containing two clear plastic bags of cocaine. Defendant, Allen, and Interian were then arrested.

In connection with the May 13, 1985, transaction, defendant, Allen, and Interian were charged by indictment with calculated criminal drug conspiracy and delivery of more than 30 grams of cocaine. Defendant was tried separately before a jury and found not guilty. At that trial, defendant raised the defense of entrapment and the State introduced the April 5 and 16, 1985, transactions for the purpose of establishing defendant's predisposition to commit the May 13, 1985, delivery.

Defendant was subsequently charged by indictment with two separate deliveries of less than 10 grams of cocaine in connection with the April 5 and 16, 1985, transactions. These charges are the subject of this appeal.

Defendant was represented at trial and sentencing on the subject charges by a person admitted into practice in Illinois in 1970, but who, at the time of defendant's trial, had been removed from the Master Roll of Attorneys, pursuant to Illinois Supreme Court Rule 756(d) (107 Ill. 2d R. 756(d)), for failing to pay his registration fee for 1987. The same person represented defendant at sentencing and was suspended from practice six months later because of a "mental infirmity, mental disorder, or addiction to drugs or intoxicants."

At trial, defendant admitted making the deliveries on April 5 and 16, 1985. As in the previous trial, he relied for his defense on the theory of entrapment. Defense counsel motioned to compel production of the informant, but that motion was denied. Without the benefit of a transcript from the former proceeding, defense counsel stipulated into the record the cross-examination of Kelly from the previous trial. He then cross-examined Kelly further regarding the entrapment defense. Kelly admitted that the informant was present during the March 27, 1985, transaction, but denied that the informant was present during

either the April 5 or 16, 1985, transaction. Kelly was not permitted to reveal the identity of the informant or respond to questioning regarding his knowledge of the relationship between the informant and Allen, or whether the informant had arranged the April 5, 1985, transaction.

Defendant was found guilty and sentenced to four years' probation with the first six months in custody. Defendant retained a different lawyer, who filed a post-trial motion alleging ineffective assistance of trial counsel and a motion in the trial court seeking to eliminate the incarceration portion of defendant's sentence. Both motions were denied and defendant brought this appeal.

I

Defendant maintains first that he received ineffective assistance of counsel in violation of the sixth amendment and Article I of the Illinois Constitution, because his trial counsel was not a registered attorney in Illinois; was "laboring under a drug-or-alcohol-addiction induced mental impairment"; failed to elicit testimony from him on direct examination regarding the defense of entrapment; failed to procure the testimony of the informant present during the May 27, 1985, transaction; and stipulated to seven-month-old former testimony although no transcript was yet available. We disagree.

To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.) A defendant cannot merely conjecture or second-guess his counsel's trial strategy or tactics (*People v. Rangel* (1987), 163 Ill. App. 3d 730, 516 N.E.2d 936), or speculate that the outcome might have been different with a representation of higher caliber (*People v. Schmidt* (1988), 168 Ill. App. 3d 873, 522 N.E.2d 1317).

We do not believe the *Strickland* test is satisfied by a mere showing that defense counsel was removed from the Master Roll of Attorneys for failing to pay his registration fee. In *Beto v. Barfield* (5th Cir. 1968), 391 F.2d 275, for example, the court rejected the defendant's claim of ineffective assistance of counsel based upon his lawyer's nonpayment of State bar fees. The court observed that under Texas law, an attorney who fails to pay State bar fees is nonetheless a valid practicing attorney and is reinstated upon payment of the

fees. Under Illinois Supreme Court Rule 756(e) (107 Ill. 2d R. 756(e)), an attorney removed from the master roll for nonpayment of fees is likewise reinstated upon payment of the fees plus a prescribed penalty.

We do not find *Beto* distinguishable on the ground that in Illinois a person who fails to pay the registration fee is "unauthorized [to] practice *** law" (see 107 Ill. 2d R. 756(d)), whereas in Texas such a person is a "valid practicing attorney." Under Illinois Supreme Court Rules 756(d) and (e), a person who engages in the unauthorized practice of law may be held in contempt of court and is subject to fines for late payment of fees. The rules do not suggest that the assistance of a person unauthorized to practice law because of nonpayment of fees and subsequent removal from the master roll is *per se* constitutionally ineffective.

*People v. Cox* (1957), 12 Ill. 2d 265, 146 N.E.2d 19, and *Mays v. United States* (10th Cir. 1954), 216 F.2d 186, relied on by defendant, are inapposite. In both of those cases, the defendants received ineffective assistance of counsel because they had been represented by persons never admitted to practice in any State or Federal court. In this case, by contrast, defendant was represented by a person who merely failed to pay his registration fee after having been licensed to practice law in Illinois for 17 years. Accordingly, as in *Beto*, we reject defendant's ineffective assistance of counsel claim based upon his lawyer's nonpayment of State bar fees and subsequent removal from the Master Roll of Attorneys.

■ We also reject defendant's contention that the *Strickland* test is satisfied because of his lawyer's suspension from practice for a "drug-or-alcohol-addiction induced mental impairment." The record does not reflect any connection between that suspension, six months after defendant was sentenced, and defendant's representation in the instant case. In *United States v. Mouzin* (9th Cir. 1986), 785 F.2d 682, the court held that the disbarment for an unrelated matter of the defendant's lawyer during the defendant's trial did not, without more, constitute ineffective assistance of counsel under the sixth amendment. In this case, the suspension took place many months after defendant's trial and there is no indication in the record that the conduct giving rise to the suspension affected defense counsel's representation of defendant. As in *Mouzin*, the suspension did not by itself constitute ineffective assistance of counsel.

■ Finally, with respect to defendant's entrapment defense, we do not find defense counsel's conduct constitutionally deficient. In some cases, defense counsel's failure to procure evidence regarding an

entrapment defense will constitute ineffective assistance of counsel. (See *People v. Solomon* (1987), 158 Ill. App. 3d 432, 511 N.E.2d 875.) In this case, however, defense counsel preserved the defense; motioned to compel the production of the informant; and elicited testimony from defendant on direct examination regarding his relationship with the informant and her presence during one of the charged deliveries. Although defense counsel stipulated into the record the cross-examination of Kelly from the previous trial without the benefit of a transcript, defense counsel also questioned Kelly on cross-examination in the present case regarding the entrapment defense and, specifically, elicited testimony that the informant was present during the March 27, 1985, transaction. Moreover, defendant has not indicated to this court how his counsel's stipulation to Kelly's former testimony, in a case in which defendant had been acquitted, in any way prejudiced the outcome of the trial in this case.

Accordingly, after considering the totality of defense counsel's conduct (see *People v. Ayala* (1986), 142 Ill. App. 3d 93, 491 N.E.2d 154), we conclude that defendant received competent representation.

II

Defendant maintains next that the prosecution stemming from the April 5 and 16, 1985, transactions was barred by either double jeopardy or collateral estoppel, because evidence of those transactions was admitted at the State's prior unsuccessful prosecution. We disagree.

Initially, we note that defendant waived this issue by not raising it in his post-trial motion. (See *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) However, even if the issue had not been waived, defendant's argument fails.

■ Double jeopardy bars the prosecution of a defendant who has been tried and acquitted on the same charge. (*Arizona v. Washington* (1978), 434 U.S. 497, 54 L. Ed. 2d 717, 98 S. Ct. 824; U.S. Const., amend. V; Ill. Const. 1970, art. I, §10; Ill. Rev. Stat. 1985, ch. 38, par. 3—4.) However, if a defendant was formerly prosecuted for a different offense, a subsequent prosecution for an offense known to the prosecution at the time of commencement of the former prosecution is not barred if each prosecution requires proof of a fact not required on the other prosecution. (Ill. Rev. Stat. 1985, ch. 38, par. 3—4(b)(1).) In particular, in prosecutions for delivery of controlled substances, where the defendant could have been separately indicted for each sale, a conviction or acquittal on one sale does not bar a prosecution for another sale. See *People v. Rivas* (1955), 5 Ill. 2d 556, 562, 126 N.E.2d 638.

■ In this case, defendant had previously been indicted for calculated criminal drug conspiracy and delivery of more than 30 grams of cocaine in connection with the May 13, 1985, transaction. Defendant had not been charged with the April 5 and 16, 1985, deliveries, and proof of those deliveries was neither at issue nor required for the prosecution of the charged offenses. Contrary to defendant's assertion, the conspiracy charge in the indictment related only to the events of May 13, 1985, and not to the April 5 and 16, 1985, transactions. Accordingly, we conclude that double jeopardy principles are not implicated in this case. *People v. Gray* (1977), 69 Ill. 2d 44, 370 N.E.2d 797, and *People v. Shlensky* (1983), 118 Ill. App. 3d 243, 454 N.E.2d 1103, relied on by defendant, are inapposite because both cases involved multiple prosecutions for the same acts, rather than distinct transactions occurring on separate dates.

■ ■ We also conclude that the instant prosecution was not barred by collateral estoppel. That doctrine, a corollary of the fifth amendment double jeopardy prohibition, prohibits relitigation of an ultimate issue of fact fully litigated by the same parties. (*Ashe v. Swenson* (1970), 397 U.S. 436, 443, 25 L. Ed. 2d 469, 475, 90 S. Ct. 1189, 1194; *People v. Ward* (1978), 72 Ill. 2d 379, 382-83, 381 N.E.2d 256.) Here, defendant's argument fails because the April 5 and 16, 1985, transactions were not ultimate issues of fact in the former prosecution. Evidence of those transactions was admitted at the earlier trial for the limited purpose of rebutting defendant's entrapment defense by establishing his predisposition to commit the May 13, 1985, delivery. Proof of the April 5 and 16, 1985, deliveries was not required to sustain a conviction for the charged offenses. Conversely, defendant's acquittal is not inconsistent with a finding that he committed the April 5 and 16, 1985, deliveries. Again, defendant's reliance on *People v. Shlensky*, 118 Ill. App. 3d 243, 454 N.E.2d 1103, is misplaced because in that case a guilty finding on perjury charges in the second prosecution was inconsistent with the defendant's acquittal in the previous trial.

### III

Defendant asserts next that the trial court erred in denying his motion to compel disclosure of the informant and in precluding questioning at trial regarding the informant's role in the March 27, 1985, transaction. Defendant maintains that although he was not charged with the March 27, 1985, delivery, evidence of the informant's role in that transaction was crucial to his entrapment defense.

Initially, we note that, like the double jeopardy and collateral estop-

pel issues, defendant waived this issue by not raising it in his post-trial motion. (See *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) However, even if the issue had not been waived, defendant's argument necessarily fails.

■■ The identity of a government informant is privileged and need not be disclosed unless fundamental fairness so requires. (*People v. Raess* (1986), 146 Ill. App. 3d 384, 496 N.E.2d 1186; 107 Ill. 2d R. 412(j)(ii).) Disclosure is generally not required where the informant merely tipped the authorities regarding the criminal act. (*People v. Chaney* (1976), 63 Ill. 2d 216, 347 N.E.2d 285.) However, disclosure may be required if the informant participated in, witnessed, or assisted in setting up the criminal act. (*People v. Chaney*, 63 Ill. 2d 216, 347 N.E.2d 285.) The test is whether the defendant's need for the identity of the informant in preparing his defense outweighs the public's interest in protecting the informant's identity. *People v. Thornton* (1984), 125 Ill. App. 3d 316, 318, 465 N.E.2d 1049.

■■ In this case, the record reflects that the informant was present during the March 27, 1985, transaction, but only introduced defendant to Kelly and asked defendant if he would sell drugs to Kelly. Defendant testified that the informant was also present during the April 5, 1985, transaction, but Kelly testified that the informant was not present at that time. It is undisputed that the informant was not present during the April 16, 1985, transaction. We note in addition that defendant knew the informant as Allen's former girl friend and so disclosure of her identity would not have greatly assisted defendant further in the preparation of his defense. Based on this record, we find that the trial court reasonably concluded that the informant did not participate in, witness, or assist in setting up the charged deliveries and properly precluded questioning regarding the informant's identity.

■■ Finally, we do not find any reversible error in the trial court's preclusion of testimony regarding the informant's role in the March 27, 1985, transaction. To establish the affirmative defense of entrapment, the evidence must show improper inducement on the part of the police and a lack of predisposition to commit the crime on the part of the defendant. (*People v. Solomon* (1987), 158 Ill. App. 3d 432, 436, 511 N.E.2d 875.) In this case, defendant argues that his entrapment defense was undermined by the trial court's improper preclusion of testimony regarding the uncharged March 27, 1985, transaction.

■■ However, defendant himself testified that he had no recollection of the events of March 27, 1985. Moreover, the only instances where defendant was precluded from eliciting testimony regarding his entrapment defense occurred on cross-examination of Kelly during the

State's case in chief. In particular, Kelly was not permitted to testify as to whether he was aware of the relationship between the informant and Allen, defendant's source, or whether the March 27, 1985, meeting had been arranged by the informant. However, Kelly was called to testify again as a rebuttal witness for the State during the defendant's case in chief. Kelly then testified on cross-examination that he did not recall talking to the informant between March 27, 1985, and April 5, 1985, and that he did not recall what brought him to defendant's apartment on April 5, 1985. Thus, even if Kelly had testified initially that he was aware of the relationship between the informant and Allen, and that the informant had arranged the March 27, 1985, meeting, the record would still be entirely devoid of any support for defendant's entrapment theory with respect to the April 5 and 16, 1985, transactions.

## IV

Finally, defendant maintains that the trial court erred in denying his motion for modification of his sentence. Defendant was sentenced to four years' probation, with the first six months in custody. Defendant moved to eliminate the incarceration portion of his sentence, but his motion was denied. Defendant asserts that the trial court improperly based its decision on disrespect for the appellate court and his release from custody following the appellate court's reduction of his bond.

A trial court's sentencing decisions are entitled to great weight and deference and will not be disturbed on appeal absent an abuse of discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) In this case, defendant's sentence was plainly within the statutory limits. In arguing for modification of the sentence, defense counsel expressed concern that the trial court's decision was motivated by improper considerations. In denying the motion, the trial court expressly indicated that its decision was based solely on whether the original sentence was appropriate. Given this record, we cannot conclude that the denial of defendant's motion was an abuse of discretion.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BILANDIC, P.J., and HARTMAN, J., concur.